## Evans v. Pearson.

*(Nashville,* December Term, 1951.)

Opinion filed March 7, 1952.

Henry C. Foutch, Assistant Attorney General, for plaintiff.

W. WRIGHT MITCHELL, TYREE B. HARRIS, III, and WAL-KER & HOOKER, all of Nashville, for defendant.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This case involves the question of the confiscation of a 1949 Chevrolet two ton truck and 168 cases of alcoholic beverages. It is contended by Pearson that (1) the search was invalid, and (2) that he had a valid permit from the office of the Commissioner of Finance and Taxation to transport the whiskey in question and therefore was legally in possession of it.

The Commissioner ordered the whiskey and the truck confiscated. His action was reviewed by the Circuit Court on certiorari and the contention of Pearson was sustained and the order of the Commissioner set aside,

so then the case is here on appeal in error by the Commissioner of Finance and Taxation.

On December 15, 1949 two representatives of the Alcoholic Tax Division of the Department of Finance and Taxation received information that the truck here involved, belonging to John Pearson, would go from Memphis to Cairo for a truck load of whiskey. These representatives went by automobile to Cairo and were waiting in Cairo at the wholesale whiskey house when the truck drove up; they saw the Pearson truck pull into the garage of the warehouse and while the truck was in the garage, one of the agents went over to the side of the garage and looked through the window and saw whiskey being loaded into the truck. The truck remained in the garage for awhile, then the garage was opened, the truck pulled out and started in the direction of the Tennessee state line. The agents followed and when the truck was near Union City in Obion County, the truck was stopped and the whiskey found and taken over by the agents.

We do not think the search was illegal. See *Thompson* v. *State,* 185 Tenn. 73, 74, 75 and 76, 203 S. W. (2d) 361.

In that case, the Court said:

"(1) This Court has recognized that officers must act with promptness in enforcing the law. The distinction must be recognized between the authority of a peace officer to arrest without a warrant for a felony on the one hand and a misdemeanor on the other. This distinction is pointed out in *Dittberner* v. *State,* 155 Tenn. 102, 291 S. W. 839. In replying to a petition to rehear in that case, this Court quoted with approval from the unreported case of *Howard Martin* v. *State* (Shelby Criminal, De-

cember 11, 1926), at pages 105 and 106 of 155 Tenn., at page 840 of 291 S. W., as follows:

" 'The distinction must not be overlooked between the statutory provisions applicable to arrests by an officer in felonies and in misdemeanors. The subsections of Shannon's Code, 6997 (Williams' Code, Section 11536), particularly in point, are as follows: An officer may arrest without a warrant:

" ' " (2) When the person has committed a felony, though not in his presence.

" ' " (3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

" ' " (4) On a charge made, upon a reasonable cause, of the commission of a felony by the person arrested."

" 'The substance of these provisions is that an officer may lawfully proceed to arrest without a warrant any person when the officer has, with reasonable cause, been led to believe that the person has committed, is committing, or is about to commit a felony. It is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws against felonies. It is impossible to define "reasonable cause" in terms to fit all cases arising. Each case must stand on its own facts. A narrow construction would open the way for the escape of desperate criminals and the defeat of justice. One too liberal would lead to the harassment of the innocent. But the officer may not be required to wait for assurance, for evidence which would convict; when circumstances fairly point to a felony it is his duty to act, and act promptly.' "

\*   \*   \*   \*   \*   \*

" 'In the instant case it is apparent that the officer

acted in good faith on a belief in the information conveyed to him. The fact that the informant gave his information in such detail, that this advance information was corroborated by the appearance at the time and place of the party accused, further supported by the appearance of the informant on the spot and his identification of the accused, are circumstances which, taken together, afforded a reasonable cause under our statute for the arrest. The arrest having been lawfully made, the search which followed was lawful, and the testimony admissible.' ''

The next question presented is the legality of the possession of the whiskey considering the fact that Tom Pearson, the brother of John Pearson and the driver of the truck, possessed a permit from the Department of Finance and Taxation.

It appears from the testimony that the driver, Tom Pearson, informed the agents that he had a permit which authorized the transportation of whiskey into the State of Tennessee and showed this permit to the arresting officers. The driver also presented a bill of lading covering this whiskey but not signed by the consignor. It appears in the record that on May 10, 1949 a permit was issued to John Pearson, purportedly for the purpose of transporting liquor through the State of Tennessee.

It is insisted that the permit was valid; that it was issued supposedly under Section 14, Chapter 49, Public Acts of 1939, as amended. Section 6648.17, Williams' Code Annotated.

Section 14 is in part as follows:

"Before any person shall transport any alcoholic beverages, within, into, through, or from the State of Tennessee, except by means of common carrier, such person shall post with the commissioner of finance and

taxation a bond with approved surety payable to the State of Tennessee in the penalty of one thousand ($1,000.00) dollars upon condition that such person will not unlawfully transport or deliver any alcoholic beverages within, into, through, or from the State of Tennessee, and evidence that the required bond has been posted shall accompany the alcoholic beverages at all times during transportation.

*　　*　　*　　*　　*　　*

"Where alcoholic beverages are desired to be transported within, into, or through or from the State of Tennessee, such transportation shall be engaged in only when in accordance with the provisions of this act.

"(a) There shall accompany such alcoholic beverages at all times during transportation, a bill of lading or other memorandum of shipment signed by the consignor showing an exact description of the alcoholic beverages being transported; the name and address of the consignor; the name and address of the consignee; the route to be traveled by such vehicle while in Tennessee and such route must be the most direct route from the consignor's place of business to the place of business of the consignee.

"(b) Vehicles transporting alcoholic beverages shall not vary from the route specified in the bill of lading or other memorandum of shipment.

"(c) The name of the consignor on any such bill of lading or other memorandum of shipment shall be the name of the true consignor of the alcoholic beverages being transported and such consignor shall only be a person who has a legal right to make such shipment. The name of the consignee on any such bill of lading or memorandum of shipment shall be the name of the true consignee of the alcoholic beverages being transported and who has previously authorized in writing

534

the shipment of the alcoholic beverages being transported and who has a legal right to receive such alcoholic beverages at the point of destination shown on the bill of lading or other memorandum of shipment.

"The driver or person in charge of any vehicle covered by any bond posted with the commissioner of finance and taxation under the provisions of this act shall, when . requested by any representative or agent of the commissioner or any person having police authority, exhibit to such person the bill of lading or other memorandum of shipment covering the cargo of such vehicle."

It is insisted by the Commissioner that Pearson could not claim protection under the provisions of Section 14 since he failed to comply with the provisions of that section, particularly subsections (a), (b) and (c), as above set out. We agree with this contention. Pearson had no bill of lading signed by the consignor. He was going far out of his way in going from Cairo to the point where he claimed the liquor was to be transported, some point in Georgia. Also the whiskey was not being transported to a consignee who had a legal right to receive such liquor at the point of destination.

In the control of liquor, it has been found expedient not only to control the use of intoxicating liquor but more expressly the traffic therein. Vol. 30, Am. Juris., 260.

At page 261, Vol. 30, Am. Juris., it is said: "The form of control is a matter for the state to decide as a question of public expediency and morality. The exercise of regulation and control of the liquor traffic has become so general that it has been said that courts may judicially notice that most free governments have made the business of selling liquor a subject of regulation." *McCanless v. State ex rel. Hamm,* 181 Tenn. 308, 314, 181 S. W. (2d) 154, 153 A. L. R. 832; *State ex rel. Major* v. *Cum-*

*mings, Mayor,* 178 Tenn. 378, 158 S. W. (2d) 713, 139 A. L. R. 837; *McCanless* v. *Klein,* 182 Tenn. 631, 639, 188 S. W. (2d) 745; *Terry* v. *Evans,* 189 Tenn. 345, 349, 225 S. W. (2d) 255.

The witness and driver of the truck, Tom Pearson, testified that he had in the past engaged in the whiskey business and had hauled whiskey for his brother, John A. Pearson, the claimant. Here the driver did not comply with the statute in going to the point in Georgia by the most direct route. The bill of lading was not signed by the consignor and then, too, the alleged transportation was to a point in Georgia where the possession of liquor is unlawful.

Not having complied with the provisions of the law pertaining to possession, and the search having been legally conducted, it results that the judgment of the lower court was erroneous. It is reversed and the property in question ordered confiscated by the Commissioner of Finance and Taxation according to the statute.